IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DONYELL LEWIS, | ) | No. 14 C 10098 |
| Plaintiff | ) ) ) | Judge Virginia M. Kendall |
| v. | ) ) | |
| WEXFORD HEALTH SOURCES, INC., And PRESENTLY UNKNOWN PHYSICIANS AND OTHER MEDICAL PERSONNEL, JOHN DOES, of WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Donyell Lewis ("Lewis") is a prisoner housed in the Illinois Department of Corrections. He filed a civil rights suit pursuant to 42 U.S.C. § 1983 against Wexford Health Sources, Inc. ("Wexford") and Presently Unknown Physicians and Other Medical Personnel, John Does, of Wexford Health Sources, Inc.[1] ("John Does") for failing to provide adequate medical care for his sleep apnea in violation of the Eighth Amendment. Lewis is currently incarcerated at the Shawnee Correctional Center and was an Illinois prisoner at Stateville Correctional Center at the time of the events in question. Lewis seeks monetary damages to compensate him for his injuries. Wexford moved for summary judgment pursuant to

---

[1] Lewis originally named Warden Tarry Williams as a defendant in his Complaint, but he voluntarily dismissed Williams when he filed his First Amended Complaint on May 9, 2015. (*See* Dkt. No. 17.) His First Amended Complaint and subsequent pleadings, including his Response to Defendants' Motion for Summary Judgment, only refer to Defendants Wexford Health Sources, Inc. and Presently Unknown Physicians and Other Medical Personnel, John Does, of Wexford Health Sources, Inc., without continuing to name the Illinois Department of Corrections and University of Illinois at Chicago Hospital. (*See id.*; Dkt. No. 50; Dkt. No. 53.) This Motion for Summary Judgment only addresses Wexford and John Does. [44, 45] Therefore, there are no longer any claims against the Illinois Department of Corrections and University of Illinois at Chicago Hospital. The Court dismisses these two defendants.

1

Federal Rule of Civil Procedure 56. For the following reasons, Wexford's Motion for Summary Judgment is granted. [44, 45]

## BACKGROUND

The following facts are undisputed based upon the Court's review of the Rule 56 statements unless otherwise noted. In July 2014, while in custody at the Cook County Jail as an inmate of the Illinois Department of Corrections ("IDOC"), Lewis participated in a one-night sleep study at the University of Illinois at Chicago Hospital ("UIC"). (*See* Dkt. No. 48, at 1-3, ¶ 1, 9; Dkt. No. 53, at 1, ¶ 1.) He was diagnosed with sleep apnea and prescribed a CPAP device[2] to be used when he slept. (*Id.*) Before this, he had never woken up from not breathing or experienced shortness of breath while sleeping. (*See* Dkt. No. 48, at 3, ¶10.) Lewis used the machine from approximately July 21, 2014, to August 5, 2014 – or about two weeks – prior to his transfer to the Illinois Department of Corrections. (*See* Dkt. No. 46-2, at 11.) On August 5, 2014, Lewis was transferred from the Cook County Jail to Stateville Correctional Center ("Stateville"). (Dkt. No. 48, at 3, ¶ 11.) The State of Illinois contracted with Defendant Wexford, a private corporation, to provide medical services to inmates housed at IDOC facilities, including Stateville. (*Id.*, at 1, ¶ 2.) When Lewis arrived at Stateville, none of his medical records contained his sleep apnea diagnosis, nor a prescription for a CPAP device. (*See id.*, at 3, ¶ 12.)

According to Lewis, he alerted two individuals, Dr. Diane and Nurse Chris, to his medical condition and the prescription for the CPAP device upon arriving at Stateville.[3] (*See*

---

[2] A Continuous Positive Airway Pressure ("CPAP") Device is commonly used to treat sleep apnea by using a mild air press to keep airways open while the user sleeps. (*See* Dkt. No. 46, Exhibit C, at 2, ¶ 3 n.1.)
[3] Lewis refers to Dr. Diane and Nurse Chris as Wexford employees, but Defendant Wexford argues that Lewis does not offer evidence to prove that these individuals were in fact employed by Wexford. For the purposes of summary judgment, Wexford admits that Lewis believes he spoke to individuals he believes are named "Dr. Diane" and "Nurse Chris." (*See* Dkt. No. 53, at 1-2, ¶¶ 2.)

Dkt. No. 53, at 1-2, ¶ 2.) He told them that he had been using a CPAP machine while he was at Cook County Jail. (*Id.*) Lewis made a request for a CPAP device to Dr. Diane. (*See* Dkt. No. 48, at 4, ¶¶ 13-14.) Dr. Diane told Lewis that she would need a copy of his medical records from UIC in order to give him a CPAP device. (*Id.*) She asked Lewis to sign a release so that she could obtain them. (*Id.*) On August 5, 2014, the same day that Lewis arrived at Stateville, an authorization for release of information form was processed to investigate Lewis's self-reported sleep apnea diagnosis and to evaluate whether he needed a CPAP device. (*Id.* ¶ 15.) Lewis believes that he communicated his medical condition to Dr. Diane and Nurse Chris on one or more occasions. (Dkt. No. 53, at 2, ¶ 5.)

On September 19, 2014, after Lewis did not receive a CPAP machine for more than a month, he filed an Official Grievance. (*See* Dkt. No. 49, Exhibit A.) On the Grievance, Lewis indicated an emergency due to substantial risk of serious or irreparable injury. (*See* Dkt. No. 49, Exhibit A.) On October 28, 2014, Lewis was discharged from Stateville. (*See* Dkt. No. 48, at 3-5, ¶¶ 11, 20.) Before his discharge, Lewis never received the CPAP machine. (*See id.* at 4-5, ¶¶ 16-18.) During that time, Lewis's medical records did not arrive at Stateville.[4] (*See id.*) Lewis says he "has no knowledge as to whether Wexford Health Services knew or did not know, at the time period stated, that [Lewis] needed a CPAP device . . . ." (*See id.* ¶ 17.) During the 74 days that he was housed at Stateville, he never suffered a breathing attack nor was he hospitalized for any breathing issues.

Lewis was subsequently incarcerated at the Vandalia Correctional Center. (*See id.* at 5, ¶ 20.) While he was there, Vandalia received the results of Lewis's sleep study. (*Id.*) Based on

---

[4] Lewis and Wexford dispute whether Lewis's self-reported medical condition constitutes a confirmed diagnosis. (*See* Dkt. No. 48, at 4-5, ¶ 17.)

the sleep study results, a medical official named Dr. Afuwape made a referral for Lewis's CPAP device, and Wexford approved. (*See id.*)

Lewis filed an Amended Complaint alleging that Wexford and John Does were deliberately indifferent to his medical needs by failing to obtain a CPAP device for him. (*See* Dkt. No. 17.) Lewis seeks monetary damages for the pain and suffering resulting from these events. (*See id.*) The parties do not dispute that "Wexford does not have a policy denying inmates access to a CPAP device where such a device is indicated for an inmate's care." (*See* Dkt. No. 48, at 5, ¶ 21.) Lewis has not further amended his First Amended Complaint to identify and name specific individuals who were personally involved with the conduct addressed in the FAC. [44, 45] (*See* Dkt. No. 17; Dkt. No. 48, at 6, ¶ 22.)

## **LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court's primary function is not to "evaluate the weight of the evidence or to determine the truth of the matter," but to determine whether there is a general issue for trial. *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). The party moving for summary judgment bears the initial burden of production to show that no genuine issue of material fact exists. *Outlaw,* 259 F.3d at 837 (citing *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). The burden may be discharged by showing "an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Upon such a showing, the nonmoving party

must set forth specific facts showing a genuine issue for trial. *Id.* (citing to Fed. R. Civ. P. 56(e)). The facts must demonstrate that the genuine issue is material and not simply a factual disagreement between the parties. *Id.* 259 F.3d at 837 (quoting *Logan*, 96 F.3d at 978). The "nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (citations omitted).

## DISCUSSION

Defendants move for summary judgment on the ground that Lewis "cannot establish deliberate indifference." [44, 45] Defendants argue that Lewis has neither alleged that Wexford's policies have violated his Eighth Amendment rights, nor that any specific individual acted with deliberate indifference. Lewis argues that the facts presented suffice to support his allegations that he communicated his diagnosis multiple times to Dr. Diane and Nurse Chris, and that these individuals did not take adequate action to secure a CPAP device for Lewis. There is no dispute that Lewis never received the CPAP machine during the time that he was housed in Stateville nor is there any dispute that he was never treated for any injury as a result of not having the CPAP machine. (*See* Dkt. No. 46-2, at 11, 19-21; Dkt. No. 48, at 4-5, ¶¶ 16-18.) The Plaintiff further has admitted that he cannot establish that there is a pattern or practice of denying inmates CPAP devices when they are needed, including stating that he knew that other people had CPAP machines. (*See* Dkt. No. 46, at 18-19; Dkt. No. 48, at 4-5, ¶¶ 16-18.)

A claim of deliberate indifference to a serious medical condition has an objective and subjective component. To meet the objective component, a plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan,* 593 F.3d 610, 834 (1994). To satisfy the subjective component, a prisoner must demonstrate a sufficiently culpable

state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 396-97 (7th Cir. 2006). Negligence does not meet this standard. *Id.*

### I. Count I – Defendant Wexford

A plaintiff can sustain a Section 1983 claim against a defendant in its institutional capacity if the plaintiff can show that the entity maintains a policy or custom that sanctions the violation of the prisoner's rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Liability against an entity is not established under the doctrine of *respondeat superior*, but rather as a "direct cause" of the violation. *Id.*

A plaintiff must demonstrate this liability through one of several available means. First, he can point to an explicit policy that has caused the violation of his constitutional rights. *See e.g.*, *Pindak v. Dart*, 125 F.Supp.3d 720, 756 (N.D. Ill. 2015). Second, he can demonstrate a "widespread practice" "by showing a series of bad acts and inviting the court to infer" policymaking that rises to the level of culpability. *Id.* (quoting *Hahn v. Walsh*, 762 F.3d 617, 636 (7th Cir. 2014)). Third, he can allege that an individual with policy-making authority committed the constitutional deprivation. *Id.* (citing *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014)). Finally, he can allege that the entity's failure to train led to the deliberate indifference of untrained employees. *See id.* (citations omitted).

Lewis concedes that "Wexford does not have a policy denying inmates access to a CPAP device where such a device is indicated for an inmate's care." (*See* Dkt. No. 48 at 5, ¶ 21.) Lewis also failed to set forth any facts that support such a policy or practice. In fact, Lewis notes that other people at the correctional facility had CPAP machines, stating: "it's not like [other people] weren't getting them." (*See* Dkt. No. 46, Exhibit B, at 68: 23-25, 69: 1-16.) He says that

he communicated his diagnosis and need for a CPAP machine to two individuals, Dr. Diane and Nurse Chris, neither of whom have been identified in the Rule 56 statements nor who have been added as defendants to this case. Lewis failed to present any facts that support that the nurse and doctor were in any policy-making authority position. (*See* Dkt. No. 17, at 5-6, ¶¶ 23-29; Dkt. 53 at 1-2, ¶¶ 1-2.) Further, Lewis fails to set forth any facts showing that Wexford's failure to train these individuals caused his injuries. (*See id.* at 1-3; Dkt. No. 17; Dkt. No. 48; Dkt. No. 50.)

Instead, Lewis points to a series of steps toward obtaining a CPAP machine without arguing that any unifying policy, custom, or widespread practice explains how Wexford violated his Constitutional rights. When he alerted Dr. Diane to his sleep apnea diagnosis and need for a CPAP machine, she asked him to sign a release form as a first step in obtaining the medical records needed to confirm his diagnosis and prescription. (*See* Dkt. No. 53, at 1-2, ¶ 2; Dkt. No. 48 at 3-4, ¶¶ 12-15.) Acting on that personal statement from Lewis, the doctor made an effort to verify the diagnosis and determine whether there was a prescription in place for the machine. On August 5, Wexford took action by processing Lewis's authorization for release of information form. (*See id.* at 4, ¶ 15.) When Lewis arrived at the Vandalia Correctional Center, Wexford approved a referral for his CPAP device once the sleep study results arrived and confirmed Lewis's diagnosis and prescription. (*See id.* at 3-5, ¶¶ 11, 20.) Further, Lewis does not dispute that Wexford did not know that he needed a CPAP device. (*See id.* at 5, ¶ 17.)

Lewis therefore has failed to set forth any facts that a unifying policy, custom, or widespread practice exists and therefore Wexford cannot be held liable under a Monell theory of liability. Accordingly, Lewis's Count against Wexford fails as a matter of law.

**II. Count II – Defendant John Does**

To sustain a Section 1983 claim against a defendant in his individual capacity, a plaintiff must be able to establish: (1) that the plaintiff had an objectively serious medical condition; (2) that the defendant acted with deliberate indifference to that condition; and (3) that the defendant's indifference caused the plaintiff's injury. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). At summary judgment, the plaintiff has the burden of producing evidence sufficient for a reasonable jury to infer that the individual was deliberately indifferent to his condition. *Love v. Nyklewicz*, 641 Fed.Appx. 558, 562 (7th Cir. 2016). *But see Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (finding claim against unknown defendants in § 1983 suit was prematurely dismissed at motion to dismiss stage). Because a deliberate indifference claim requires inquiry into the mental state of the defendant, a plaintiff must identify those individuals in order to bring a suit against them. *Id.* (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005)). Failure to identify these individuals at or before summary judgment, despite having an opportunity to do so through discovery, "dooms" the plaintiff's claim. *Id.* While defendants must be given a reasonable opportunity to identify unnamed defendants and amend their complaint at the earlier stages of litigation, defendants must be given fair notice, including timely service. *See* Fed. R. Civ. P. 4(m); *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996); *Delgado-Brunet v. Clark*, 93 F.3d 339, 343 (7th. Cir. 1996); *see e.g.*, *Wetzel v. Sheahan*, No. 97-2868, 210 F.3d 377, at *4 (N.D.Ill. Feb. 22, 2000).

According to Lewis, he alerted two individuals, Dr. Diane and Nurse Chris, to his medical condition and prescription. (*See* Dkt. No. 53 at 2, ¶ 2). However, Lewis's claims still state a suit against John Does. [44, 45] (*See* Dkt. No. 17.) Lewis has not amended his Complaint to name those individuals, despite having had the opportunity to do so through discovery. (*See*

*id.*) At this point, Lewis has failed to provide fair notice to the still-unnamed defendants before trial. *See Delgado-Brunet*, 93 F.3d at 343; *see e.g.*, *Wetzel*, 210 F.3d at *4. Without identifying and bringing suit against named individuals, at this stage, Lewis has not sufficiently alleged a § 1983 claim against any individuals. *See Love,* 641 Fed.Appx. at 562. Lewis's claim against John Does therefore also fails as a matter of law.

Given that both counts fail as a matter of law for the above stated reasons, the Court need not reach whether Lewis failed to exhaust his administrative remedies or advance sufficient evidence to hold Wexford and John Does liable for deliberate indifference to his medical needs. The Court notes, however, that Lewis was given recruited counsel and did not respond to summary judgment without legal counsel. Even if this Court were to review the summary judgment against the unnamed Does, it seems highly unlikely that he would be able to overcome summary judgment because he has not set forth facts that show he was injured by the delay in obtaining the machine or that the delay was done with deliberate indifference. Although a breathing condition requiring a CPAP machine can be a serious medical condition, Lewis has failed to present facts showing that his rights were violated.

## CONCLUSION

For these reasons, the Court grants Wexford's Motion for Summary Judgment against Wexford and John Does pursuant to Rule 56. [44, 45] *See* Fed. R. Civ. P. 56. The Court expresses gratitude to the recruited counsel who have donated their time and assistance to Mr. Lewis.

Date: 11/10/2016

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois